**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-02767- STV

WALTER AH PEDONE,

      Plaintiff,

v.

NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

      This matter is before the Court on Plaintiff Walter Ah ("Anthony") Pedone's Complaint seeking review of the Commissioner of Social Security's decision denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. § 401 *et seq.* [#1] The parties have both consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. [#13] The Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This Court has carefully considered the Complaint [#1], the Social

_____

[1] Carolyn W. Colvin is the named Defendant in the Complaint as she was the Commissioner of Social Security at the time the Complaint was filed. [#1] Nancy A. Berryhill currently serves as the Acting Commissioner of Social Security. [#16 at 1 n.1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill, as Commissioner Colvin's successor, "is automatically substituted as a party." *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Security Administrative Record [#11], the parties' briefing [##16, 17, 18], and the applicable case law, and has determined that oral argument would not materially assist in the disposition of this appeal. For the following reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** for further proceedings.

## I.    LEGAL STANDARD

### A.    Five-Step Process for Determining Disability

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[2]  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment."  *Lax*, 489 F.3d at 1084.  "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . ., the Commissioner [ ] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

---

[2] "Substantial gainful activity" is defined in the regulations as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910; *see also* 20 C.F.R. §§ 404.1572, 416.972.

"The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled." *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). The five-step inquiry is as follows:

1. The Commissioner first determines whether the claimant's work activity, if any, constitutes substantial gainful activity;

2. If not, the Commissioner then considers the medical severity of the claimant's mental and physical impairments to determine whether any impairment or combination of impairments is "severe;"[3]

3. If so, the Commissioner then must consider whether any of the severe impairment(s) meet or exceed a listed impairment in the appendix of the regulations;

4. If not, the Commissioner next must determine whether the claimant's residual functional capacity ("RFC")—*i.e.*, the functional capacity the claimant retains despite her impairments—is sufficient to allow the claimant to perform her past relevant work, if any;

5. If not, the Commissioner finally must determine whether the claimant's RFC, age, education and work experience are sufficient to permit the claimant to perform other work in the national economy.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Bailey v. Berryhill*, 250 F. Supp. 3d 782, 784 (D. Colo. 2017). The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four, after which the burden shifts to the Commissioner at step five to show that claimant retains the ability to perform work in the national economy. *Wells v. Colvin*, 727 F.3d 1061, 1064 n.1 (10th Cir. 2013); *Lax*, 489 F.3d at 1084. "A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Ryan v. Colvin*, 214 F. Supp. 3d 1015, 1018 (D. Colo.

---

[3] The regulations define severe impairment as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

2016) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)).

**B.      Standard of Review**

In reviewing the Commissioner's decision, the Court's review is limited to a determination of "whether the Commissioner applied the correct legal standards and whether her factual findings are supported by substantial evidence." *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017) (citing *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994)).   "With regard to the law, reversal may be appropriate when [the Commissioner] either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards." *Bailey*, 250 F. Supp. 3d at 784 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Lax*, 489 F.3d at 1084).   "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan*, 399 F.3d at 1261-62 (quoting *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992)).   The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).   The Court, however, "will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Hackett*, 395 F.3d at 1172.

## II.    BACKGROUND

Plaintiff was born in 1955.  [AR 23, 117][4]  Plaintiff completed high school and four years of college education.  [AR 23, 135]  Plaintiff is able to communicate in English. [AR 23]  On December 27, 2012, Plaintiff protectively filed an application for DIB.  [AR 16, 52-53]  Plaintiff claimed a disability onset date of March 1, 2010, and thus Plaintiff was 54 years old at the time of the alleged onset.  [AR 16, 23, 53, 117, 130]  Plaintiff claims disability based upon mental impairments, including, but not limited to, bipolar disorder, depression, anxiety, difficulty sleeping, and post-traumatic stress disorder ("PTSD").  [*See* AR 52-53, 134]  Plaintiff worked as a pharmacist at Safeway from at least 1997 until March 1, 2010, the alleged onset date.  [*See* AR 120-22, 135; *see also* #16 at 20 (noting Plaintiff worked as a pharmacist beginning in 1974)]  Plaintiff attempted to return to work at Safeway after suffering a mental breakdown, but was unsuccessful and quit.  [AR 344; *see also id.* at 120-22]  He then attempted to work at a different establishment, Albertsons, LLC, but was unable to concentrate and was afraid of making a mistake that might endanger the public.  [AR 344]  Plaintiff worked exclusively as a pharmacist before he became unable to work.  [AR 135; *see also* #16 at 20]

### A.    Medical Background

Plaintiff began to see his treating psychiatrist, Dr. Brett Fouss, in June 2009.  [AR 320]  Plaintiff reported a history of abuse, anxiety including social anxiety, and depression since junior high school.  [AR 320-21, 327]  Dr. Fouss assessed Plaintiff with generalized anxiety disorder and a rule out diagnosis for PTSD.   [AR 321]  Plaintiff

---

[4]  All references to "AR" refer to the sequentially numbered Social Security Administrative Record filed in this case.  [#11]

continued to see Dr. Fouss for follow-up appointments throughout 2009. [AR 304, 311, 314, 317, 326] Plaintiff also saw Dr. Stacey Porterfield, who treated him for bipolar disorder, anxiety, and obstructive sleep apnea. [AR 196-220] While Plaintiff consistently reported difficulties with depression and anxiety during this time, Plaintiff's medical providers also noted that he was exercising regularly, including hiking in the mountains, and routinely adjusted medications in order to manage Plaintiff's conditions. [AR 202, 311, 317, 326] On October 8, 2009, Plaintiff reported to Dr. Fouss that he was having difficulty sleeping, crying often, and that he needed to take a leave of absence from work because of a mistake he had made. [AR 314] Dr. Fouss observed that Plaintiff was "tearful, but able to regroup." [*Id.*] A few weeks later, Dr. Fouss again noted that Plaintiff was seeking leave from work, but that Plaintiff planned to return to work and was feeling "a lot better," with his anxiety improved. [AR 311] Dr. Fouss also observed that Plaintiff was hiking in the mountains for exercise. [*Id.*] Dr. Fouss sent a letter to the Safeway Human Services Department in support of Plaintiff's leave of absence, anticipating that Plaintiff would "return to work full time" by November 21, 2009. [AR 307]

By December 3, 2009, Plaintiff had returned to work and Dr. Fouss reported that Plaintiff's work was going well, and that his sleep apnea was being managed by the CPAP device. [AR 302] Around the same time, Dr. Porterfield noted that Plaintiff was "doing well" on his current medications. [AR 196] Dr. Porterfield continued to treat Plaintiff for bipoloar disorder and obstructive sleep apnea through June 2010. [AR 193] At the June 2010 appointment, Dr. Porterfield again noted that Plaintiff was "doing well" and continuing to see Dr. Fouss. [*Id.*]

Plaintiff returned to Dr. Fouss on February 24, 2011. [AR 291] At this appointment, Plaintiff reported that he had quit his Safeway job two weeks before, and was looking for a new job. [*Id.*] Dr. Fouss observed that Plaintiff's mood was good overall and that Plaintiff had been hiking a lot. [*Id.*] At subsequent appointments in 2011, Dr. Fouss noted Plaintiff's increasing anxiety and depression, and frequently adjusted Plaintiff's medications to help with mood and various reactions to the medication. [AR 276, 278-80, 285-86, 288] By October 2011, Dr. Fouss reported that Plaintiff was "feeling good," though he had low energy. [AR 269] On December 5, 2011, Dr. Fouss again reported that Plaintiff was feeling "really good," and that his mood was markedly improved. [AR 262]

Plaintiff continued to see Dr. Fouss throughout 2012. In June 2012, Plaintiff reported that he had "been doing pretty good," and was still searching for a job. [AR 256] But a few months later, during an appointment on December 10, 2012, Plaintiff informed Dr. Fouss that he was going to apply for disability because he did not "feel comfortable working with his anxiety and depression," that people "bug him," and that he would "feel better not having to look for a job." [AR 248] Plaintiff also mentioned that he had a "black mark" on his working record from 1989. [*Id.*] Plaintiff next saw Dr. Fouss on June 7, 2013, reporting that he was "happy w[ith] his current regimen," and Dr. Fouss concluded that he was stable. [AR 239]

Plaintiff was evaluated by psychiatrist Dr. Victor Neufeld on August 1, 2013, at the direction of the Colorado Department of Human Services Disability Determination Services. [AR 341] Plaintiff reported having suffered two nervous breakdowns, most recently in 2010. [AR 343] As a result of the breakdowns, Plaintiff stated that he "lay on

the couch in a fetal position for 3 months." [*Id.*] Plaintiff also reported lack of motivation, neglect of his personal hygiene, losing interest in music and hiking following the nervous breakdowns, staying inside, having no social network, only leaving to go somewhere if accompanied by his wife, suicidal thoughts, difficulty with concentration, and feelings of worthlessness and hopelessness. [AR 343-46] Dr. Neufeld observed that Plaintiff was casually dressed and groomed, "able to develop a rapport," did not have any conversational impairments, and was "cooperative and appeared to provide good effort." [AR 345] Dr. Neufeld's diagnostic impression was that Plaintiff had bipolar disorder, with mania controlled by medication, severe depression and anxiety disorder, with features of social phobia and PTSD. [AR 348] Dr. Neufeld concluded that Plaintiff was "moderately impaired in his ability to recall instructions, and markedly impaired in social interaction, persistence and pace. He requires ongoing mental health care." [*Id.*]

Dr. Fouss evaluated Plaintiff on July 3, 2014, finding that Plaintiff had mild restriction in daily living activities, and marked difficulties in maintaining social functioning, concentration deficiencies, and episodes of deterioration and decompensation in work settings, causing Plaintiff to withdraw. [AR 353] Dr. Fouss concluded that Plaintiff would likely be absent from work more than four days per month as a result of these impairments and the necessary treatment. [*Id.*]

## B. Procedural History

Plaintiff's application for DIB was initially denied on August 26, 2013. [AR 68-70] On September 19, 2013, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR 75-76] A hearing was conducted before ALJ Debra Boudreau on August 13, 2014, at which Plaintiff and vocational expert ("VE") Dennis Duffin both

testified.  [AR 16, 28-51]  Plaintiff was represented at the hearing by attorney Brandon Selinski.  [AR 28; *see also id.* at 115]

On September 24, 2014 the ALJ issued a decision denying Plaintiff benefits.  [AR 16-24]  Plaintiff timely requested a review of that decision by the Appeals Council, which denied his request for review on May 19, 2016.  [AR 6-10]  Plaintiff sought an extension of time to file a complaint in this Court.  [AR 4-5]  The Appeals Counsel granted the extension on October 24, 2016, allowing Plaintiff an additional 30 days from the date Plaintiff received their letter to file a civil action in federal district court.  [AR 1]  Plaintiff timely filed an appeal with this Court on November 14, 2016.  [#1]  Because the Appeals Council denied Plaintiff's appeal, the ALJ's decision is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.

### C.    The ALJ's Decision

The ALJ denied Plaintiff's applications for DIB after evaluating the evidence pursuant to the five-step sequential evaluation process.  [AR 16-24]  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 1, 2010, the alleged onset date.  [AR 18]  At step two, the ALJ found that Plaintiff had two severe impairments: major depressive disorder and generalized anxiety disorder. [*Id.*]  At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments in the appendix of the regulations.  [AR 19-20]

Following step three, the ALJ determined that Plaintiff retained the RFC to perform work "with no exertional limitations" [AR 20-23], but with the following limitations:

> [Plaintiff] retains the ability to understand and remember moderately complex instructions that can be learned and mastered within a three-month period. He can sustain concentration for these tasks as long as work duties do not require interaction with the general public. He should also not have frequent or intensive social interaction with coworkers and supervisors.

[AR 20] The ALJ provided a narrative setting forth the relevant evidence considered in determining the RFC and explaining the weight given to each of the medical opinions in the record. [AR 20-23]

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work as a pharmacist, because the demands of this work exceeded Plaintiff's RFC. [AR 23] Finally, at step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [AR 23-24] Specifically, the ALJ agreed with the VE's testimony opining that Plaintiff could perform the following representative occupations: landscape laborer, field crop harvest worker, and janitor. [AR 24] Accordingly, the ALJ determined that Plaintiff was not under a disability from March 1, 2010 through September 24, 2014 (the date of the ALJ's decision). [*Id.*]

## III. ANALYSIS

Plaintiff raises three challenges to the ALJ's decision on appeal. First, Plaintiff contends that the ALJ erred in relying on the VE's testimony at step five, without addressing Plaintiff's objections to the VE's testimony. [#16 at 5-9] Second, Plaintiff argues that the ALJ did not adhere to Agency policy and Tenth Circuit authority in

weighing the consistent opinions of Plaintiff's treating physician and the consultative examiner. [*Id.* at 9-19] Finally, Plaintiff maintains that the ALJ's credibility assessment of Plaintiff was deficient because of the ALJ's failure to consider Plaintiff's work history. [*Id.* at 19-22] The Court finds that the ALJ did not meet her burden at step five, and accordingly only addresses Plaintiff's first argument below.

Plaintiff argues that the ALJ erred by improperly relying on VE testimony and by failing to address Plaintiff's pre- and post-hearing objections to the VE's testimony at step five of the disability evaluation. [#16 at 5-9] Defendant responds that the ALJ was entitled to rely on the VE's testimony, Plaintiff cannot show that the ALJ's determination at step five was not based on substantial evidence, and therefore Plaintiff was not prejudiced by the ALJ's failure to rule on Plaintiff's objections to the VE's testimony. [#17 at 6-8]

As noted above, at step five, the Commissioner must determine whether the claimant's RFC, age, education and work experience are sufficient to permit the claimant to perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Grogan*, 399 F.3d at 1261; *Bailey*, 250 F. Supp. 3d at 784. The burden shifts to the Commissioner at this step to show that the claimant retains the ability to perform work in the national economy. *Wells*, 727 F.3d at 1064 n.1; *Lax*, 489 F.3d at 1084. "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [plaintiff is] able to meet with [plaintiff's] physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b). In determining whether jobs exist in significant numbers, the ALJ considers the following factors: "the level of claimant's disability; the

reliability of the [VE's] testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such work." *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)). An ALJ may take administrative notice of "reliable job information available from various government and other publications," including the Dictionary of Occupational Titles ("DOT"), published by the Department of Labor. 20 C.F.R. § 404.1566(d)(1). As part of the Commissioner's burden at step five, the ALJ must "thoroughly develop the vocational evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999). And, regardless of the step of the analysis, the ALJ is always responsible for fully developing the record, including "[q]uestioning a vocational expert about the source of his opinion." *Id.* at 1091.

## A. Whether the ALJ Must Rule on Objections to VE Testimony

Plaintiff first argues that an ALJ is required to rule on objections to a VE's opinion, pursuant to § I-2-5-55 of the Hearings, Appeals, and Litigation Law Manual ("HALLEX") (2005). [#16 at 6] That section states, in relevant part: "If a claimant raises an objection about a VE's opinion, the ALJ must rule on the objection and discuss any ruling in the decision."[5] HALLEX § I-2-5-55 (2005), *available at* https://web.archive.org/web/20150923080051%20/http://www.ssa.gov:80/OP_Home/hallex/I-02/I-2-5-55.html. As an initial matter, the Tenth Circuit has not determined whether HALLEX carries the force of law. *Lee v. Colvin*, 631 F. App'x 538, 543 (10th Cir. 2015).

_____

[5] This is the relevant text from the version of HALLEX in effect on August 13, 2014, the date of Plaintiff's hearing before the ALJ. [AR 16, 28-50] This section of HALLEX has since been amended. *See* HALLEX, § I-2-5-55 (2016), *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-55.html; *see also Moffit v. Berryhill*, No. 17-4015-JWL, 2018 WL 276770, at *4 (D. Kan. Jan. 3, 2018).

Instead, "[a]ssuming without deciding" that relief can be granted for HALLEX violations, the Tenth Circuit has held that "only prejudicial violations of HALLEX provisions entitle a claimant to relief." *Id.*

The parties apparently do not contest that the ALJ did not rule on Plaintiff's objections to the VE's testimony. [*See* #16 at 5-6; #17 at 7-8]  Although during the hearing the ALJ stated that she would take Plaintiff's objections to the VE's qualifications into consideration [AR 31], it is clear from the record that the ALJ did not explicitly address any of Plaintiff's objections, either during the hearing or in her written opinion. [*See* AR 16-24, 28-51]  The ALJ also did not discuss the VE's background, experience, or qualifications at the hearing or in her written opinion. [*Id.*] Furthermore, the ALJ did not question the VE, except to note that she would assume the VE's testimony would be based on his knowledge, education, training and experience, and consistent with the DOT, unless the VE stated otherwise, and to pose a hypothetical to the VE to determine whether Plaintiff could perform other work.[6]  [AR 41, 44-45] Accordingly, Plaintiff is entitled to relief if the ALJ's failure to rule on his objections was prejudicial.

Plaintiff asserts two main objections to the VE's testimony, arguing that: 1) the VE improperly relied upon SkillTRAN and did not explain how this database was a reliable source of jobs data; and 2) the VE was not qualified to testify about the numbers

---

[6] The only other questions posed by the ALJ to the VE during the hearing were whether the job examples provided by the VE were an exhaustive or representative list, whether the jobs would encompass all exertional job levels (heavy, medium, light, and sedentary), and whether there would be a substantial number of heavy and medium jobs.  [AR 46]  The significance of these questions appears minimal, however, because the ALJ's hypothetical stated that the individual, like Plaintiff, would have no exertional or physical limitations.  [AR 45]

of jobs available to Plaintiff in the economy.[7]   [#16 at 7-9]  Plaintiff also raised these concerns and others through cross-examination of the VE by his attorney during the hearing, and in his pre- and post-hearing memoranda.  [AR 48-51, 157-58, 163-67]

## B. VE's Use of SkillTRAN

In his post-hearing memorandum, and again here, Plaintiff specifically objects to the VE's use of the commercial software SkillTRAN as the basis for the VE's determination of the numbers of jobs that Plaintiff could perform in the national economy.  [AR at 165-67; #16 at 7-9]  Plaintiff argues that "this data source does not have a verifiable methodology which has been subjected to peer review, and has not been administratively noticed by the Agency," and accordingly, "there [wa]s no basis for

---

[7] Plaintiff also argued in his post-hearing memorandum that the ALJ did not address the discrepancy between Plaintiff's RFC, which included the limitation that Plaintiff could "sustain concentration for these tasks as long as work duties do not require interaction with the general public" [AR 20, 45], and the VE's testimony that Plaintiff could perform work as a janitor [AR 46].  [AR 166]  Plaintiff explained that the DOT defines this job as including the responsibility to "[c]aution tenants regarding complaints about excessive noise, disorderly conduct, or misuse of property."  [AR 166 (quoting DOT 382.664-010 (4th ed. 1991))]  Accordingly, Plaintiff argued that he would not be able to perform this job and the example could not "be used to deny [his] claim."  [AR 166]  The Court notes that  the "ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."  *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (emphasis omitted) (quoting *Haddock*, 196 F.3d at 1091; *see also* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 ("Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.").  Failure to do so may constitute reversible error if the VE did not identify any other jobs consistent with the Plaintiff's limitations.  *See Duncan v. Colvin*, 608 F. App'x 566, 577-78 (10th Cir. 2015).  But because the Court finds that the VE's testimony was not reliable, and because this testimony was the basis for the ALJ's conclusion about the jobs that Plaintiff could perform, the Court need not reach Plaintiff's objections to the specific jobs identified by the VE and adopted by the ALJ.

the [VE's] trust in the software" or for the ALJ's reliance on the VE's testimony. [#16 at 7]

The ALJ "has a duty to fully develop the record[,] even when the claimant is represented by an attorney." *Haddock*, 196 F.3d at 1091. "Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within this duty." *Id.* Consistent with the ALJ's burden at step five, courts that have upheld the use of SkillTRAN's Job Browser Pro database or similar software "did so only where the software was one of several resources utilized by the VE in making an assessment." *Hancock v. Comm'r of Soc. Sec.*, No. 6:15-cv-206-Orl-DNF, 2016 WL 4927642, at *4 (M.D. Fla. Sept. 16, 2016) (citing *Drossman v. Astrue*, No. 3:10-CV-1118, 2011 WL 4496561, at *6 (N.D. Ohio Sept. 27, 2011) (finding substantive evidence where the ALJ "cited the fact that the VE did not rely solely on the Job Browser Pro software but also consulted with other vocational experts and sources of data used by other vocational experts"); *Poisson v. Astrue*, No. 2:11-cv-245-NT, 2012 WL 1067661, at *9 (D. Me. Mar. 28, 2012) ("While the vocational expert may not have known, in precise technical detail, how the Job Browser Pro system worked, she explained why she thought that the underlying data was reliable and endorsed the numbers derived therefrom as accurate. She, thus, relied on her professional experience and expertise, and not strictly on a software program, in endorsing the numbers provided to the administrative law judge."), *report and recommendation adopted sub nom.*, *Poisson v. Soc. Sec. Admin. Comm'r*, 2012 WL 1416669 (D. Me. Apr. 24, 2012)).

By contrast, courts have found that a "VE's reliance on SkillTRAN without any testimony or evidence that she could endorse those numbers based on her knowledge and expertise render[s] her testimony unreliable," and requires remand "for the ALJ to properly consider evidence regarding the number of jobs the Plaintiff could perform." *Hancock*, 2016 WL 4927642, at *4 (citing *Thompson v. Comm'r of Soc. Sec.*, No. 2:15-cv-53-FtM-CM, 2016 WL 1008444, at *6 (M.D. Fla. Mar. 15, 2016) (same)). For example, in *Maniscalco v. Colvin*, 167 F. Supp. 3d 207 (D. Mass. 2016), the plaintiff argued that the VE's reliance on SkillTRAN was unreliable because the "methodology d[id] not accurately reflect how many of the jobs within the aggregate census code group" were actually consistent with her RFC. *Id.* at 220. The court held that the accuracy and reliability of SkillTRAN was "not sufficiently developed" on the record, and that "the lack of clarity" was itself "grounds for remand, as the [c]ourt [wa]s unable to conclude that the Commissioner's step-five findings were supported by substantial evidence." *Id.* The court further found that the VE's expertise did not appear to "provide[] independent support for the ALJ's finding that a substantial number of jobs exist[ed]" because the VE had only testified that she derived the job numbers from SkillTRAN. *Id.*

Similarly, in *Russell v. Berryhill*, No. 16-cv-1251-JPG-CJP, 2017 WL 3704354 (S.D. Ill. Aug. 28, 2017), the court reversed the Commissioner's decision where the "ALJ did not ask any questions" about SkillTRAN, and where the VE "did not testify that the job numbers contained in SkillTRAN are accurate or reliable, or that SkillTRAN is generally accepted and relied upon by vocational experts." *Id.* at *5. The VE only testified that she "relied on Bureau of Labor statistics 'by way of Job Browser Pro

software through SkillTRAN' and on reviewing the Bureau of Labor statistics website." *Id.* The court explained that it could "very well" be the case that SkillTRAN had become "widely accepted by experts in the field." *Id.* But "the problem [wa]s that the ALJ made no attempt to confirm that using SkillTRAN's numbers was a reliable method for the VE to formulate her opinions in this case." *Id.* "Simply put, the VE testified that she relied on information from SkillTRAN software for the job numbers, and the ALJ did nothing to establish that the SkillTRAN information [wa]s reliable." *Id.*[8]

The reasoning from these cases applies with equal force here. Like the VE in *Russell*, the VE testified that the source of his testimony was SkillTRAN, which derives its data from the Bureau of Labor Statistics. [AR 49] Although the VE testified that SkillTRAN used a "proportional distribution" to extrapolate DOT data from Standard Occupational Classification ("SOC") codes, he also stated that he did not know how SkillTRAN calculated these percentages and that he did not know whether any articles had been published reviewing the methods of the software. [AR 49-50] The VE offered no testimony with respect to the reliability of SkillTRAN, its use or acceptance by other

---

[8] The Court recognizes that the Seventh Circuit may apply a stricter standard than the Tenth Circuit with respect to the ALJ's duty to respond to objections raised by a plaintiff in an administrative hearing. *See, e.g.*, *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("If the basis of the [VE]'s conclusions is questioned at the hearing, . . . the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702 [of the Federal Rules of Evidence]) to find out whether the purported expert's conclusions are reliable."), *superseded by regulation on other grounds as stated in Miller v. Comm'r of Soc. Sec.*, No. 4:10 CV 2852, 2012 WL 398650, at *16 (N.D. Ohio Feb. 7, 2012). But, the Court nevertheless finds the *Russell* opinion to be instructive in light of the Commissioner's burden at step five "to thoroughly develop the vocational evidence." *Haddock*, 196 F.3d at 1090.

VEs, his personal experience using the database, or his ability to corroborate the numbers based on his own training or knowledge.[9]

Moreover, the ALJ did not question the VE to any extent about SkillTRAN's reliability, or address this issue in her written opinion.  As noted by the court in *Russell*, "[i]t is surely not unreasonable to expect the ALJ to ask a few direct questions to establish the basis for the VE's testimony about job numbers and to demonstrate that the basis for the VE's opinions is reliable."  2017 WL 3704354, at *6; *see also Haddock*,

---

[9] In his post-hearing objections, Plaintiff also argued that the VE did not testify as to how he could provide job numbers specific to DOT codes, when no government data or source provides a means for making such a correlation between DOT and SOC codes. [AR 156-57, 164-66]  While acknowledging that the "Social Security Regulations specifically require the use of the DOT as the foundation for vocational testimony at hearings," Plaintiff argued that the DOT was outdated, having not been updated since 1991, no longer in use by the Bureau of Labor Statistics, and largely obsolete.  [AR 165, 166; *see also id.* at 157]  Plaintiff also cited to a letter from the Department of Labor, indicating that the DOT has been replaced by the Occupational Information Network ("O*NET").  [AR 166]

Some courts have remanded for the ALJ to rule on these types of objections concerning the DOT's reliability.  *See, e.g., Sams v. Berryhill*, No.1:17CV15-CAS, 2017 WL 3974239, at *7, *8 (N.D. Fla. Sept. 8, 2017) (finding that plaintiff had "raised the issues of the continuing presumption of reliability of the DOT for certain occupations for which the descriptions have not been updated for many years and which may no longer be available in significant, or even insignificant, numbers in the national economy," and remanding for "the ALJ to reconsider and expressly rule on Plaintiff's objections"); *see also Dimmitt v. Colvin*, 816 F.3d 486, 489 (7th Cir. 2016) (describing O*NET as "the most current manual of job descriptions," and criticizing the Social Security Administration for failing to endorse it, despite the Administration's awareness of "the obsolescence of the [DOT]").  Others have come to the opposite conclusion.  *Moffit v. Berryhill*, No. CV 17-4015-JWL, 2018 WL 276770, at *6 (D. Kan. Jan. 3, 2018) (noting that an advisory panel commissioned by the Social Security Administration to review O*NET had found that it was not suitable for disability adjudication in its current form); *see also James v. Colvin*, No. 16-470-EWD, 2017 WL 4185479, at *12 (M.D. La. Sept. 21, 2017) (finding "the VE did not err by basing her testimony upon information obtained from the DOT" and rejecting plaintiff's argument that the DOT was "an obsolete and stale database" and that the court should look to O*NET).  Ultimately, because Plaintiff's other objections justify remand, the Court need not resolve this issue here, but notes that the ALJ's failure to even recognize this objection further supports the Court's conclusion that the ALJ's determination at step five was not supported by substantial evidence.

196 F.3d at 1090 ("To relieve the ALJ of the burden to thoroughly develop the vocational evidence at step five would shift the burden to the claimant in the form of a requirement to cross-examine the vocational expert."). This lack of clarity alone requires remand, because the Court cannot conclude that the Commissioner's findings at step five were supported by substantial evidence. *See Maniscalco*, 167 F. Supp. 3d at 220. "[W]ithout any testimony or evidence" that the VE "could endorse" the SkillTRAN data, based on his own knowledge or expertise, the VE's testimony was unreliable and the ALJ's conclusions in reliance on this testimony were thus not supported by substantial evidence. *Hancock*, 2016 WL 4927642, at *4.

### C. VE's Qualifications

Plaintiff also raised objections to the VE's qualifications to testify regarding the number of jobs available to Plaintiff in the national economy, both before, during, and after the hearing. [AR 31, 157-58, 167] In his briefing before this Court, Plaintiff also points to the VE's "*admission that he has no personal experience calculating job incidence data and had not personally gathered any*," in support of Plaintiff's position "that there were valid reasons to question the vocational expert's reliance upon SkillTRAN." [#16 at 8]

The Court again finds the *Russell* analysis instructive. There, the "VE did not identify any specific training or experience that she relied upon for her job numbers" and the "ALJ did not cite any specific part of the VE's background either." 2017 WL 3704354, at *5. The ALJ "merely reminded [the VE] of her obligation to alert [the ALJ] if [the VE's] testimony conflicted with information" in the DOT. *Id.* at *4. Overruling the plaintiff's objections, the ALJ found that the VE had "significant experience from which

to testify regarding job incidence in the local, regional, or national economy" and took administrative notice of the job information cited by the VE. *Id.* The district court reversed and remanded, concluding that the VE's testimony was inadequate. *Id.* at *5-6; *see also Haddock*, 196 F.3d at 1090, 1091 (noting that "an ALJ has a duty to fully develop the record," including "[q]uestioning a [VE] about the source of his opinion," and that an ALJ cannot "elicit and rely on summary conclusions given by a VE" at step five).

Here, the ALJ did not even rule on plaintiff's objections to the VE's qualifications, but merely stated that she would take them "into consideration." [AR 31] Plaintiff's objections are not mentioned anywhere else throughout the hearing, or in the ALJ's written opinion. Like the ALJ in *Russell*, the ALJ in this case noted that she would "assume" that the VE's testimony would be based on his knowledge, education, training and experience, and would be "consistent with the DOT," unless he stated otherwise. [AR 41] Furthermore, the Court notes without deciding that in reviewing the VE's C.V., there is limited indication that the VE had relevant vocational experience, with the potential exceptions of his positions (for unspecified periods of time) as a career counselor at Pikes Peak Community College and vocational rehabilitation consultant at United Rehabilitation and FasTrak Rehabilitation. [AR 87-89] *Cf. Radosevich v. Berryhill*, No. 16-C-1119, 2017 WL 4119626, at *16 (E.D. Wis. Sept. 18, 2017) (finding the VE was qualified to testify where his resume demonstrated he was a licensed professional counselor, had an MS with a focus on vocational rehabilitation, and "show[ed] a long career in vocational rehabilitation, including more than ten years as a rehabilitation counselor, twelve years as the Assistant District Director and three years as the District Director for the Wisconsin Division of Vocational Rehabilitation"), *appeal*

*filed* 2017 WL 4119626 (7th Cir. Nov. 9, 2017).  But again, the VE's qualifications were not developed to any extent by the ALJ in the record.  It is insufficient to rely on the VE's "unspecified 'experience,'" *Russell*, 2017 WL 3704354, at *5, and from the record, it does not appear that the VE could, or did, independently corroborate the SkillTRAN data relied upon by the ALJ, *see Maniscalco*, 167 F. Supp. 3d at 220.

In short, the record is hardly developed with respect to the reliability of SkillTRAN or the VE's qualifications.  *See id.*  Accordingly, the Court cannot conclude that the ALJ's determination at step five, which adopted the VE's testimony, was supported by substantial evidence.  Accordingly, the ALJ's failure to rule on Plaintiff's objections was prejudicial.

The Court is not persuaded by Defendant's response to Plaintiff's brief. Defendant argues that the determination of whether a claimant can perform work existing in significant numbers in the national economy is a matter of fact finding for the Commissioner, and "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." [#17 at 6 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004))].  But that commonsense judgment requires consideration of the reliability of the VE's testimony. *Allen*, 357 F.3d at 1144 (citing *Trimiar*, 966 F.2d at 1330).  And although an ALJ may, as Defendant argues, rely on VE testimony, the ALJ certainly may not do so blindly and instead has the burden to "thoroughly develop the vocational evidence," including "[q]uestioning a [VE] about the source of his opinion."  *Haddock*, 196 F.3d at 1090, 1091.  Finally, Defendant's argument that "Plaintiff has not provided any basis to think that the jobs of landscape laborer, field crop harvest worker, or janitor do not exist in

significant numbers in the national economy," completely misconstrues the burden of proof at step five. [#17 at 7] At this stage of the evaluation, "the ALJ bears the burden . . . to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have." *Haddock*, 196 F.3d at 1088. In other words, "it is not the claimant's burden to prove he cannot work at any level lower than his past relevant work; it is the agency's burden to prove that he can." *Id.* at 1090 (alterations omitted).

Because of the ALJ's error at step five, this case must be remanded. But the Court makes no determination with respect to whether Plaintiff was disabled during the relevant period or that he should be awarded benefits. The Court leaves those issues to be determined by the Commissioner after further proceedings.

## IV.     CONCLUSION

Accordingly, for the foregoing reasons, the Court **REVERSES** the Commissioner's decision that Plaintiff was not under a disability within the meaning of the SSA from March 1, 2010 through September 24, 2014 and **REMANDS** this matter to the Commissioner for rehearing and reconsideration consistent with this Order.


DATED: January 18, 2018                    BY THE COURT:

                                           s/Scott T. Varholak_____
                                           United States Magistrate Judge